Ewing, G. J.
In this action of ejectment, both parties claim ender Samuel Clement, who as both acknowledge, became seized of tho premises in question, on the 20th day of June 1818. The plaintiff shews a conveyance in fee simple, from Samuel Clement and wife, to David Jones, dated July 22d 1818, and a deed of mortgage, dated 24th February 1819, from David Jones to his lessors j and thus establishes a pritca facie title.
The defendants, deduce title in the following manner : Judgment. on bond and warrant of attorney was entered up on the 21st September 1818, in the Court of Common Pleas of the county of Gloucester, in favor of Joseph 0» Swett, against Sam *194 uel Clement. In June term 1820, this judgment was revived upon scire facias post annum et diem, and a writ oí fieri facias de bonis et terris was issued thereon, returnable to the ensuing term of October, was delivered to the sheriff on the 26th day of June 1820, and was levied upon the premises in question. On the 21st August 1821, the sheriff made sale of the premises to Joseph C» Swett, the plaintiff in the execution, and executed and delivered a deed to him, on the 28th November 1826, after the commencement of this action. A few days after the above mentioned sale was njade by the sheriff, a judgment was entered up,in the same court, on the 7th September 1821, against the said Joseph C. Swett, in favor of Wm. Rudderow, aud an execution oí fieri facias de bonis et terris was delivered, to the sheriff, on the 25th Sept. 1821. Ry virtue of this execution, the sheriff-made sale of the premises in question, on the 6th day of August 1825, and executed and delivered a deed on the 22d day of the same month, to Thomas Redman and David Vanderveer, under whom the defendants claim by apt conveyances.
Nov. 1828.
From this view of the case, it is seen that tbe defendants claim title through a sale and conveyance of the premises by the sheriff under a judgment ancj execution against Swett. When this execution was delivered to the sheriff, and when the sale and conveyance were made by him, the only title, if any, ivhich Swett- had to the premises, was, that the premises had been struck off to him at sheriff’s sale ; the deed to him by tbe sheriff not having been made until long afterwards.
The defendants then have no valid title to the premises, unless the deed from the sheriff to Swett, when executed, relates back to the time of the sale, and takes full effect from that period, or unless after tbe sale and.prior to tbe deed, Swett had such an interest in the premises, as was liable to be seized and sold under execution.
In the examination of tbe first of these topics, it is not necessary to enquire, whether there be any purpose for which the deed might relate to the sale, we are to ascertain whether it may so relate, as to sustain the intermediate sale and conveyance by the sheriff; and to such extent only, are my remarks intended and my conclusion to reach.
The language of the legislature, in the 12th section of the act making lands liable to be sold for the payment of debts, leave? *195 iittie scope for doubt or difficulty on this Load. The sheriff shail make to the purchaser, as good and sufficient a dead or conveyance for the lands, tenements, hereditaments and real estate so sold, as the person against whom the said writ or writs of <r?xei-ut’on were issued, might or could have made for the on mo, at, or before the time of rendering judgment against him or her 3 which 'deed of conveyance shall transfer to, or vest in the said ¿mi chatter as good and perfect an estate to the premises there” iiynenikmed, as the perron against whom the said writ or writs of execution worn issued, was seized of, or entitled to, at, or be-fare the said judgment; and as fully to all intents Paul purposes, ■as if such person had sold the said lands, tenements, hereditaments aud real estate to such purchaser, and had received the consideration money, and signed, sealed and delivered a deed for the same.” By ¡his provision it is seen, the transfer of the sitie aud estate is to ho made by the deed 3 the deed is to vest the estate in the purchaser. Neither the sale by the sheriff, nor •¿he payment of the purchase money are contemplated by the legislature, as having guy influence in passing the estate. If, acense then, an obvious and very safe conclusion that until tic act is done, which the legislature have prescribed as the mode whereby the estate is to he transferred, a transfer is not made, aud that the estate cannot vest at an earlier period than the act done whereby k is so be vested, in the absence of any expression in the statute, which seems in any wise designed to give to the deed an earlier operation or efficacy. Had the legislature intended an earlier operation, we might expect to have found p. provision that the deed should, from the time of the sale, or from the payment of tire purchase money, vest the estate in the purchaser. Bui sts nothing of the kind is contained in the statute, as uo retrospective operation is in terms given to the deed, as the deed is to vest the estate, the just conclusion hi, that the legislature intended that the estate should vest at the execution and delivery of the deed and not earlier, at which time, on general principles, a deed lakes effect.
In giving this construction to the statute which seems so plainly to have been designed, there is no collision with r.ny of the principles of common law, in respect to the relation of deeds 3 on the contrary, it is in conformity with them ; and such conformity ought always to ho weighed in the construct’on of r.statute. *196 If the statute affords a rule, .from its transcendant force it musí prevail; otherwise, the rule is to be sought in the doctrines of the common law.
“There is,” says Lord Mansfield, in Vaughan v. Atkins, 5 Burr. 2764, “ no rule better founded in law, reason and convenience, than this, that all the several parts and ceremonies necessary to complete a conveyance, shall be taken together as ope act, and operate from the substantial part- by relation. The formal effectuates the substantial part, and therefore must relate to it.” What then in this case is the substantial part ? The purpose to be effected is the transfer of the estate. Now the legislature, after providing that notice of the sale shall be given j that a public vendue shall be made, and the lands struck off to the highest bidder, have declared that the transfer shall be made by the deed. It necessarily follpws then, that in making the transfer, the execution and delivery of the deed, is the substantial part. From that part then, according to Lord Mansfield, the whole must operate. To that act the rest must relate. Viner, lays down the-rule with respect to relation, in somewhat different language. “Where there are divers, acts concurrent to make a conveyance, estate' or .other thing, the original act shall be preferred, and to this the other acts shall have relation.” 18 Viner, tit. Relation, 8. It would not perhaps be unprofitable to enquire whether, when the legislature have declared, that-the conveyance and estate shall be made by the deed, the antecedent sale, or striking off by the sheriff, comes within the scope, or is one of the “ divers acts concurrent,” meant in1 this passage. But taking it to be so, it is to be presumed the rule is laid down by Lord Mansfield, in a more clear but not in a different manner, and that the same idea should be attached to the term, original, as to his, more explicit word, substantial, and this conclusion will seem the more sound when it shall appear in the sequel, that if Viner means by the original, the first act in order of time, he is contradicted by adjudgéd cases reported in the English books. And these cases also establish another principle, of vital importancé in its application to the case before ús. Where the person making the conveyance has an estate in the lands,; relation may be had to the substantial part of the conveyance; but where it is made by one, having no estate, but a power or authority only, the estate does not pass until all the requisite acts are completed, and from the last *197 to ¡be first there is no relation so as to sustain an intermediate transfer. The statute of 27 Hen. B, ch. 16, for enrollments, requires a deed of bargain and sale, whereby any estate of inheritance or freehold shall be made, to be enrolled within six months, and enacts that the lands, &sc. shall not pass except the same be cmrolled within that time. It has however, been held, that if a deed made by a person seized, be enrolled within the six months, the land passeth from the delivery of the deed j and* although after the delivery and acknowledment, either bargainor or bargainee should diej for when the deed came to be enrolled,the bargainee in judgmcntof law was seized from the delivery. 2 Inst. 674, Mallory v. Jennings. A different rule however prevails, where the sale is made by commissioners of bankrupts 5 an instance more analogous than the former to our sheriff’s sales. In the case of Perry v. Bowes, reported in 1 Ventr. 360, and Jones 196, the commissioners"of bankrupts had assigned the lands in question to the lessor of the plaintiff by deed of bargain and sale, which wats afterwards enrolled j the statute of bankrupts, 13 Eliz. ch. 7, di reeling the commissioners by deed indented, enrolled in one of the Queen’s Majesty’s courts of record, to make sale of the lands, tenements and hereditaments of the bankrupt. This action was brought after the enrollment, but the demise was laid of a day subsequent to the delivery, and prior to the enrollment; and she question was, whether that was sufficient to entitle the plaintiff to recover. On the part of the plaintiff it was argued, that after the deed was enrolled, it should relate to the delivery, and it was compared to a bargain and sale, where, by the statute of Henry 8, when the deed is enrolled it relates, and if the bargainee sells before enrollment, the subsequent enrollment makes it good. But the court said, that the commissioners had no estate, but solely a power given to them by the statute of bankrupts which ought to be executed in the manner prescribed by the statute with the circumstances it directs, which is not only by deed indented, but enrolled likewise $ and they must execute the power, in all circumstances, before it can become effectual, and the court holding that the deed did not relate so as to sustain the intermediate lease, rendered judgment for the defendant. Preston in his Essay on abstracts of title, says, “ While a bargain and sale by the commissioners of bankrupt, operates only from she time of ©mroUntgnt, other bargains ami sales opéralo either in *198 fact or by relation from the time of their execution. 1 Prest 168. And he gives the reason. “ As commissioners have an authority onty aní* not an es£a£e> no estate will vest under the bargain and sale unliLenroIIment.” Ibid 171. He farther says, “till the assignees have an estate under a deed indented and enrolled, they cannot communicate a legal title to a purchaser. Ibid 172. “ Under bargain and sales from commissioners of bankrupt, no estate passes till enrollment. The commissioners have only an authority to sell by deed, indented and enrolled. No'estate is in them, and their authority is not exercised till all the circumstances under which it is to he performed are complete.” Ibid 289. In the late case of Doe v. Mitchell, the demise was by the assignees of a bankrupt, and was laid after the date of the commission*, hut before the general assignment, and also before the bargain and sale by the commissioners to the assignees. The plaintiff was nonsuited on the trial, and moved to set aside the nonsuit on the ground that the bargain and sale, when executed, related to the act of bankruptcy, and so the demise which was after the commission, and of course after the act of bankruptcy was said to be well. The court enquired,■“ if there was any authority extending the doctrine of relation to the conveyance by the eommissioners of the bankrupt’s freehold; for without some authority, they said it would be going too far, to carry it to that extent; and • no authority being cited they, said it remained in the bankrupt, though not beneficially, until taken out of him by conveyance.35 The analogy between these cases and a sale by a sheriff is very obvious. In real estate, levied on by execution, the sheriff has no kind of interest or estate. Unlike chattels, of which he may fake possession, and in which he acquires a species of property, sufficient in certain circumstances to sustain an action, he could not enter into possession, nor prosecute, if the defendant in execution should be ousted, or if injury should be done by waste or spoliation. He has a power or authority given to him by the statute to be executed. He has no title in himself but is the instrument of the law to transfer the title. Hence like the commissioners of bankrupts, having no estate in himself but an authority only, the freehold remains in the defendant, no estate passes to the purchaser until all' the circumstances are completely performed, until the deed whereby the law says, the title is to be transferred shall have been executed and delivered. In case of *199 ordinary persons tho deed raay relate, because the grantor had art estate in him, hut uot so with respect to the sheriff fti respect, to him tho ground on which tho relation is sustained does not, exist. And this consideration furnishes an answer to the ar ■ gnment, drawn from the supposed analogy to tho operation which a deed sometimes has, by relation to the* time of the contract for the purchase of * he land, so as to render valid an intermodiste disposition of the laud by the granice» But there, tho grantor '«as the whole estate its him at the tinto of the contract, e* plain principio of equity regards him as a trustee, at least from ♦he time he receives the purchase money ; and the granice having made the conveyance, is not, nor are those claiming under him, permitted to question the eonveyaueo ho has made. An argument of some force at least upon the Gist view of it, to gives the same relation to tho deed of the sheriff as to that of au individual, is drawn from tho words of our statute already mentioned, n sue! as fully to all intents and purposes, as if such person had -sold the said lauds, tenements, hereditaments and real estate to such purchaser, and had received tho consideration money and signed, sealed and delivered h deed for the same.” But tho nrgu ■ uieni claims too much force for these words; and far beyond the intention of the legislature» They were meant to shew tho nature of tho estate to be conveyed, “ as good and perfect an estáis as the defendant had f‘ the time at which the nature of the «state should ha food, “ at or before tho judgment,” so that no subsequent lien or alienation should have effect; and as the deed was not to he made by tho defendant, but by tho officer having no estate, 10 shew that the deed thus made should vest in the purchaser, the estate of the defendant held by him at tho judgment as completely as if the conveyance had been made by ills defendant himself. Tho effect of the deed to convey, wr.s alono designed in-this clause. Its relation, if it should have; any, was left to the regulation of the principles of the common law. la tho consideration of this subject, it thonld not bo overitx>ked that out sheriffs sale.1, are, or rather may be, always for cash, so that a purchaser may, at all tintos without delay, obtaiu his deed ami acquire his title.
i« order to establish the doetdac of t clarions as contended fur on,the pait of the defendant, pud to shew that it should opevito so qs to sustain his title, two esses are cited frota the Sf, *200 preme Court of the State of New-York. Jackson v. Dickinson, 15 Johnson 309; and Jackson v. Ramsay, 3 Cowen. 75. But these cases, notwithstanding some general expressions, which however, ought always to be understood with reference to the subject under consideration, do by no means carry the doctrine of relation to the extent requisite, for the support in the present case of the defendant’s title. In the first case the question was, whether a purchaser of premises subject toa mortgage at sheriff’s sale, on the first of March, whose deed was not executed until the 19th, was precluded from contesting the validity of the mortgage, by a decree of foreclosure upon a bill in Chancery, filed on the 10th of the month, to which he was not a party. In the latter case, a sale was made by the sheriff under execution, against one Mr. Michael.- Sometime afterwards he departed this life. No deed being made by the sheriff, the devisee of Mr. Michael, brought an ejectment against the purchaser who had gone into possession. Before the trial, a deed was executed to the purchaser, and the court held that this deed, against the héir, who had in fact no better rights than the original defendant, was an available defence. In neither of these cases was the validity of an intermediate sale or conveyance by the purchaser, or the divesting of his interest against his consent, and by the intervention oflegal process, brought into view. But another consideration clearly proves, that these cases ought to have no weight here. The law of the state of New-York, under, and in reference to which they were decided, is essentially different in the point now under examination, from our statute for the regulation of sheriffs’ sales. The statute of New-York, (1 Rev. Laws, N. Y. 392, edition of 1807) does not prescribe or direct the making of a deed by the sheriff. It requires an advertisement and sale at public vendue; but as to any deed or conveyance by the sheriff is totally silent. Hence, it became a serious question in New-York, whether the sale at vendue was not sufficient to pass the title, and whether a deed from the sheriff to the purchaser, was at all necessary for that purpose; and it was not until the case of Simonds v. Catlin, 2 Caines 62, that the question was settled by judicial determination; a deed was then held necessary; but it is to be remarked, not because the act regulating sheriffs’ sales prescribed it, but because of the general terms of their statute of frauds requiring, like the English statute, a deed or note in *201 writing to pass an interest in lands, and because, in some measure, as it would seem from the argument of the court, of the propriety, policy and convenience of a conveyance by deed. But by our statute as it has been already mentioned, a deed to be made by the sheriff is not only expressly required, but is indispensable $ and is the very act whereby the estate is to be transferred to and vested in the purchaser. In Jackson v. Dickinson, the court said, 55 the subsequent delivery of the deed being mere matter of form,j must have relation back to the time of the purchase at sheriff’s sale.” The coon then considered, and doubtless very properly since their statute did not require it, the deed as the formal pari of the transaction, and hence the conclusion drawn by them was in accordance with the fule stated by Lord Mansfield, that the formal part, or the deed, must have relation to the substantial •part or the sale. I trust I have shewn that our statute has given she converse characters to these parts j and hence the rule of relation does with us apply in a different manner.
Upon the whole I am satisfied that the title of the defendants ©annot be supported by the doctrine of relation | that the deed executed and delivered by the sheriff in 1826, cannot relate t© and operate from the sale in August 1821, nor thereby give title to Swett, in such manner as to support the levy under the execution againsthim, in September 1821/and the sale and conveyance of the sheriff in August 1825.
The question then remains, whether in September 1821, os August 1825, after the sale, and prior to the deed, Swett had such an interest in the premises as was liable to be seized and sold under execution. The solution of the first inquiry extends in a great measure to determine this question. For it is clear that at the proposed period, Swett had no legal estate in the premises | nor can ha even now be considered as having had u legal estate at that time, unless by relation. And it is also clear, there is no ground to presume, that Swett was then in actual possession of the promises. It was indeed insisted by the defendant’s counsel, that as they are in possession, and were when this action was brought, and as they claim title under Swett, the legal presumption is, that they received from him a possession which he had previously held. For such an inference there would perhaps be somewhat more reason if the defendants elaiosed by, or had received, a direct conveyance fxw In
*202 the absence of any proof as to possession, it may sometimes be presumed to be in him who has the legal title. But Swett had no legal title, when the defendants went into posséssion, nor until since the commencement of this suit. The presumption then on this ground is wanting, and so therefore there is no proof either from direct evidence or legitimate presumption, that Swett had possession, at the levy and sale. It was indeed said by the defendant’s counsel, that a deed had been given by the sheriff in August 1821, but for themselves they repudiated that deed 5 they did not give it in evidence, nor profess to claim under it. It was produced by the plaintiff; no judgment or execution was offered to sustain it, and upon looking into it, the execution which it recites commands the sheriff to make the debt and damages of the lands, whefeof Clement was seized in June 1820, and does not therefore affect the premises in question, which had been conveyed by him to Jones, in July 1818. It was indeed surmised that the recital was a mistake, and the deed really designed, for the same purpose, as that of November 1826; but of the alleged mistake no evidence is given, and we are therefore to' read the deeds as their contents purport.
At the time then of the levy and sale under the execution against Swett, the cáse stood thus: The premises had been struck off to him- by the sheriff at public vendue. If he had paid the purchase money, or whenever he did pay it, he had a right to call on the sheriff for a deed; which, the conditions of sale being fulfilled, a court of equity, and perhaps the court out of which the execution issued, would have compelled the sheriff to make. At most he had an equitable interest, but such an interest could not be the subject of levy, sale, and conveyance under execution. Of such an interest he was not seized, in the meaning of the clause of the act of the legislature, which thus defines the real estate whereon the execution may be levied. In Jackson v. Scott, 18 John. 94, it was held that a possession under a contract for purchase was an interest in land, on which there might be a levy. But the possession was the principal ingredient, the groundwork of the levy, and without it the interest, would not have been sufficient. We have decided, say the court, that a mere equitable interest cannot be sold on execution, bu£ if connected with the possession of the land, the legal interest of which the possession is evidence, may be sold» The pureha *203 ser acquires all the debtors’ legal rights, and possession is a legal right. In 2 John. Ch. Rep. 312, Chancellor Kent said. tea mere equity is not within the reach of process at law. 1 do not know of any ease in which a court of equity has considered an execution at Saw as binding an equitable right. The idea is altogether inadmissible.” In 1 John. Ch. Rep. 56, the same Chansellor thus describes the subject of execution at law s “ There must be either a real estate or aa ¡merest known and recognized at law, or an equitable title within the purview of the provision in the statute of uses to which I have alluded, or an execution at law will not reach Ij. A judgment at law is not a lien, on n mere equitable interest in land, and the execution under it will aot pass an interest which a court of law cannot protect and enforce,” And just before, the Chancellor had said in reference to the statute of uses s “ If the contract had been fulfilled so that Smith had been entitled to a dead, when the judgment was obtained, and sale made, the statute might have applied.” The provision of the statute of uses in New-York, to wisieh th© Chancellor refers, is contained in the 4th section of the act conoerning uses, N. Y. Rev. Laws 68, and authorises the seizure of lands held in trust on a fieri facias against the cestui qua trust, .But in this state we have no similar enactment Laying asid© then that clause of the Chancellor’s proposition, and the interest of Swett in the present case is not comprehended in either of the other clauses, for it was neither real estate, nor an interest known and recognised at law. But if we had a similar clause in our statute, or if an equitable interest might be levied upon and sold, it will have been observed that the Chancellor very properly makes it a prerequisite, that the contract should have been fulfilled, and the purchaser should have been entitled to a deed j and in truth it is presumed the most zealous advocate for the ¡most liberal stretch of the execution, will not consider the interest of the purchaser sufficient until he has paid the purchase money. If this then he a sound rule, its application fully evinces the insufficiency of the interest of Swett, to be the subject of seizure and sale, for there is no evidence before us, that prior to the sale or conveyance by the sheriff under the execution against ¡him he had paid the purchase money; nor indeed until the deed af November 1826. The deed of August 1821, although invoked by tlis counsel of the defendant, is for the reasons I have here» *204 tofore suggested in respect to it, wholly inadequate for that purpose.
From this view of the case, the conclusion in my opinion clearly results, that Swett had not at the sale and conveyance by the sheriff, an estate or interest in the premises liable to seizure and sale.
As the ease does not in my apprehension, shew any valid title in the defendant's, it is unnecessary to examine the positions assumed by the plaintiff’s counsel, and so fully discussed at the bar, that the judgment against Clement was void for want of jurisdiction, and could not if valid bind after acquired lands bona fide aliened before execution. 1
Nor is it necessary to examine sundry questions, raised by the defendants on the trial and appearing on the state of the case, by way of objection to.certain parts of the evidence and of motion for nonsuit, as these were expressly waived on the argument at the bar.
One.point raised by the defendants counsel remains to be considered. It was insisted, the plaintiff had failed to maintain the issue on his part, because he claimed under a mortgage given to secure the payment of a bond, and on the trial did not produce the bond but relied on the mortgage only. This point is not well taken by the defendants. The plaintiff having produced the mortgage whereby, as between the parties to it, the legal estate was conveyed by the mortgagor to the mortgagee, and it appearing the day of payment in the condition had passed, the mortgagee was not bound to produce the bond. The mortgage shewed a present estate, defeasible indeed on a condition — on a condition subsequent — and he who claimed the benefit of that condition was bound to shew that it had been fulfilled.
Drake, J.
The first objection relied upon, in opposition to the title of the defendants, in this case, is, that the bond,..on which the judgment was entered, in 1816, against Joseph and Samuel Clement, at the suit of Joseph C. Swett, is nota bond given for “the payment of money only” within the words and meaning of the statute, Revised Laws, p. 685; and that therefore the court had no authority to enter such judgment.
The principal part of the bond is in the ordinary form, for $6000, and conditioned for the payment of $3000, “ with inter». *205 -3SÍ from the date thereof, on or before the first day of March next.” But it is added, “ It is here understood that if Joaíah F. Clement,'does pay to Richard French, his executors, administrators, or assigns, the full amount of an obligation assigned to the said Richard French by the said Samuel Clement, for $3000, with interest, from the date of the said obligation, bn or before the first day of March next, then the above obligation to be void,” &e. Now, this bond may be defeated by the payment of $3000, directly to the obligee, or by the payment thereof to a third person therein named, and who held another security for the same sum. Still it is a bond for the payment of money only. It is not to be discharged by the performance of a duty, or service, or by doing any collateral act. Promissory notes and hills of exchange of this description have been adjudged not to he such within the custom of merchants; not because they do not comply with the requisite of being, for the payment of money only, but because they do not comply with another requisite, that is that they be payable at all events. A requisite equally important to these securities, as they are intended to circulate from hand to hand, and should not be incumbered with conditions, and liable to various modes of defeasance. But the same reasons will not apply in opposition to the entering of these summary judgments upon bonds. They have no protection in the hands of an assignee; and if improperly entered, the court will open or cancel them as equity may require. The legislature merely meant £o guard against uncertainty, as to the amount orignally Stipulated to be payable. That it should be of a nature to be determined by calculation, and not embrace a case of unliquidated damages. This bond comes within the words of the act, and as it appears to me, within its proper and contemplated application. Upon this view of the subject, it will be unnecessary to inquire whether if the bond is not one contemplated by the act, the judgment would, for that reason, be wholly void.
Again, this judgment was entered on the 21st day of September 1816, before Samuel Clement, the defendant in the same, acquired title to the premisos now in 'dispute. They were conveyed to him on the. 26th day of June 3 SI 81 and on the 22d day of July of the same year, he conveyed them to David Jones °, under a mortgage executed by whom the plaintiffs' claim title, No exemuioE was issued on this judgmoEt, until after the lands *206 were again sold by Clement. The judgment was revived by scire facias, in June 1819, and a writ of fieri facias was soon afterwards issued thereon, and levied on the premises in question.
Upon this state of facts, it is objected that the judgment was no lieu on these lands, and that they should be held by a Iona fide purchaser, clear of all incumbrance from the same. The 12,th section of the act, making lands liable to be sold for the payment of debts, Revised Laws 430, favors this construction, but other parts of it, and particularly the 1st, 6th, and 13th sections, leave no room for doubt, in my mind, that the legislature contemplated that a levy might be made on, lands acquired after the date of the judgment, or conveyed to other persons before execution. And the uniform understanding, and course of practice are so. An argument cannot fairly be drawn in favor of the contrary doctrine from cases of personal property. There the judgment does not bind at all. And the execution becomes a lien only after actual delivery to the officer, and then merely for a particular purpose; not to remain long an incumbrance on this fleeting property, but for the purpose of enabling the sheriff to levy ou it before the return of the writ. And if he do not, the force of the execution is spent, and it does not remain a lien. But land is of a permanent nature. It is conveyed by deed duly executed and recorded. The title can be. traced, and ordinary camion will enable a purchaser to examine it, and see through whose hands it has passed, and whether any of the owners have' made a prior conveyance, or incumbered it by mortgage or judgment. Judgments are mattersof public record. And as the lien is not of a secret nature, and cannot endanger the rights of the vigilant, l think the interests of justice, as well as the, sound construction of the statute, require the extension of the lien of the judgment, so as to embrace this after acquired property.
The remaining question, agitated in this cause, is one of considerable difficulty. It arises upon the effect of the sheriff’s deed to Swett, bearing date the 21st day of August 1821, the time of the sale, but really executed after the present action was brought, and after the second sale of the premises, when they were levied on and sold as the property of Swett, and purchased by the defendants. Had Swett, before receiving any deed from the sheriff, such an interest in the premises as could be levied on and sold ? A mere equitable interest in a term of years, *207 ar other chattel cannot bo sold on a. fieri facias. 8 East 467. By the statate of Westminster 2, (13 Edwd. 1,) c. 18, the sheriff may deliver to the plaintiff “ a moiety of his (the debt- or’s) land.” Under this statute, it was decided that a trust estate could not be extended. But by the 29 Chs. 2, c. 3, lands, &c. held in trust may be extended in the hands of trustees, for the debt of cestui que trust. By our act of assembly, Revised, Laws, p, 431, sect 5, an execution may be issued against the goods and chattels, lands, tenements, hereditaments, and real estate of the party against whom such judgment is, or may be, awarded. Words similar to those of the first English statute authorising the elegit, and liable to the same construction; and we may presume contemplated to be confined to cases of legal title, as the construction of the English statute | and the supplementary statute whereby trust estates were embraced, were well known | and if it shall be considered, that, as the debtor’s property may possibly escape under this construction of the statute, it would be good policy to extend it to embrace trust estates, it is for the legislature to remedy the defect as the British parliament did. In the 6th section, prescribing more particularly the form and manner in which the execution shall issue, the lands, &e. whereof the debtor was seised, are authorised to be taken. Now a seisin, always refers to a legal title. Á person is never said to be seised of an equitable interest. It is a right at law cither reduced into possession or not, and constituting either* a seisin in deed or a seisin in law.
The cases of resulting trusts held to be bound by execution in the cases reported-in 1 Johnson 45, and 3 Johnson 217, and others, to be found in their reports, depend ipson a clause in the statute of New-York, by which the sheriff is authorised <f to seize in execution all such lands, §°c. as any other person or persons be, in any manner of wise seized to the use or in trust for him against whom execution is seized,” lac. Aa equity of redemption can hardly be said to form an exception to this principio, as it has long beers considered a legal estate 5 that the mortgagor in possession is real owner 5 and that the mortgagee has but a chattel, and notwithstanding Its form, the mortgage is a mere security.
Upon this view of the case, the interest of Swett, being merely an gga"?ab!-3 interest wastsot the ¿abject of few sad sab ua *208 der the writ of fieri facias last issued. And if the legislature have refrained from making these equitable estates liable to execution, on account of the difficulties which often attend the acquiring of the legal title, and the consequent uncertainty of their real value, which would make them the subjects of mere speculation, and liable to be sacrificed for a trifling part of their worth,. I am not disposed to do that indirectly, which they refrain from doing directly. I am not inclined to suffer an act done some years afterwards, to make that a valid levy and sale, which was not so when the sale actually took place,,and when the bidders had to judge of the value of the property. Í cannot adopt any doctrine of relation of the sheriff’s deed of 1826, back to the time of the first sale which shall make good the second.
Ford, J. concurred.
Let judgment be entered for the plaintiff.